Good morning. Land, Waylon, appearing for Mr. Farah. How are you, sir? Fine, thank you. Thank you for coming out from Virginia. I did not do that, sir. The gentleman from Virginia contacted me yesterday. That's even better. We worried a little bit about the cost of this, but it's a tough case, and we thought it would be important to have counsel's help with it. Thank you. We would submit that the immigration judge made four reversible errors in the hearing of the emerits. First of all, she simply did not understand or listen to the testimony. The questioning of the solemn applicant began on page 102 of the record. By page 109, the petition's attorney had asked him 31 questions, and 29 of those questions had received clear, responsive answers, and the other answers were slightly off the mark but still relevant. At that point, the judge abruptly stopped the questioning and asked both the interpreter and the petitioner if they had any problems with communication, and they said no. And suddenly she started out with saying, at least half the questions had been asked by your own counsel, the answers to those questions had been nonresponsive. When counsel objected, she raised that estimate to 99%. This was not true. The record speaks for itself. You can read those eight pages. If the judge is correct, then we'll agree with her. You appealed to the BIA, right? That is correct. And what were the grounds that you raised in the appeal to the BIA? The grounds were raised that the judge's findings regarding credibility were not supported by anything in the record or anything that she said in the record. And the BIA considered that issue, right? They considered the issue, but what they did, they realized that she had not given specific cogent reasons for her credibility finding, and she made the credibility finding three places in her statements. And the BIA came back and said, well, there are differences between his written statement and what he testified to. He testified to things that he did not cover in his written statement. That was one of the issues before the IJ. And the issue was addressed in the questioning, right? Why there was a discrepancy. In fact, the IJ did not want to hear any testimony regarding credibility or trying to rehabilitate. At the end of the direct examination, she made up her mind. She said specifically, she told the government attorney, don't bother cross-examining. I know where this case is going. I pretty much know what my decision is going to be at this point. But by all means, if you feel compelled to enlighten me with your cross-examination, do so. But remember, I've already made up my mind about the evidence. And I don't know that you're going to improve the respondent's case any, but you had the right, so go ahead. Well, the pivotal issue in this case, I take it, is the discrepancy between his testimony at the hearing and what he put in his application, right? Because the application didn't talk about any of the torture events he complained about, right? That's the key issue in this case. That is one of the issues in this case, yes, Your Honor. Just addressing that one. All right. He never gave an explanation why there was that discrepancy at the hearing, did he? He was not asked about that by anybody, by the judge, by the, pardon? There was a question, and I thought he said, well, we don't talk about those things. Well, during his testimony where he was talking about being forced to sit on the Coke bottle, he said, I haven't told anybody about this. And at another point he said, I don't talk to people about this. But he wasn't asking questions about it. That was not in response to a question. That was simply a statement that he made. And so nobody came back and followed that up. The judge didn't. You're interpreting that as an explanation for his discomfort with talking about these things and why he might have been less than fluid. He did testify that he had dictated this story to a friend who had written it down, and that was the statement that was attached to the application when it was filed. And he testified about that. And then he made the other two statements, you don't talk about these things, and I've never talked with anybody about this. And that was, but the judge. So there was an appeal filed. There was an appeal filed. And in the appeal, the explanation that was given, there was an opportunity to explain, the explanation that was given was cultural factors for the discrepancy. Isn't that right? I don't know quite frankly, Your Honor, where that came from in the appeal. Well, that was in the brief. That was in the brief. You're right. And so that's what the BIA then adopted, cultural, referred to, and said cultural factors are not an adequate explanation. They said because he was well-educated, he testified he finished elementary school. They testified that he had an attorney who asked him a lot of questions. But the judge, having apparently noted these discrepancies, had an obligation. If she felt that this was an important issue, she had an obligation to ask him at least one question about this. She not only did not ask him any questions about this, she told the trial attorney, don't bother asking questions. I've already made up my mind. The best test of credibility is a searching cross-examination. And she already told the trial attorney, I don't bother. Don't bother doing it. I'm not going to even listen to your cross-examination. I don't want you to test his credibility. And that, to me, is outrageous. I've handled cases in court for 30 years, and I've never heard a judge say that, telling the trial attorney, don't ask questions. I've already made up my mind. Your position, if I can fill in what I think you're suggesting, is that sometimes if you're proffering a witness, you want him to be subject to cross-examination because, by withstanding cross-examination, he boasts of his own direct testimony. That is correct. Is that your point? That would be my point there, that if a person can survive a good cross-examination and he comes through consistent, clear, cogent, answering all the questions, and, in fact, if you read the cross-examination, it's good. Let's say we were to agree with you. What would be the remedy you would see from us? The case should go back to a different judge, and the case should be heard again. Different judge for what? For a new hearing on the merits. This judge, 18 pages into the testimony, she'd already made her mind up. Let me finish my question. I'm sorry. Because I will narrow it down for you. For a renewed determination of eligibility, for a determination of his credibility, or for a determination based on our saying that he is credible and the hearing has to go from there. I know which one you prefer. I'm really asking which you think is correct. I think if you read the transcript, there is no question about his credibility. The immigration judge cited not one contradiction, not one inconsistency, nothing. So what happens after Ventura? Let's say we were to agree with you. And I'm not saying we were. I understand. But let's say we look at it and we say, look, we read this thing. It sounds pretty plausible to us. It's halting and the like because witnesses tend to be nervous when they testify, particularly in the beginning, particularly when they're having language difficulties, particularly when they have to talk about things that are private and unpleasant and painful. Let's say we agree with all of that. And the reasons given by the IJ are not plausible. What is the extent of our power at that point? Can we, after Ventura, simply deem the witness to have been credible and remand for further proceedings consistent with that? Or do we simply set aside the termination of non-credibility and set it back for another four rounds? Where the immigration judge is. Yes, Your Honor. The immigration judge simply does not adequately address the credibility issue. And the board did not make a credibility finding. It is the judge's credibility finding. And you have a right to review that credibility finding. And if you disagree with that credibility finding and you find that the evidence compels a contrary conclusion, you have a right to reverse the immigration judge, grant the asylum, and send it back for proceedings consistent with that decision. Yes. Why would we need a new judge then? Well, I'll say, if the case goes back for a hearing de novo, then I think it would require a new judge. If we granted a new trial, you would want a new judge. Yes, Your Honor. What's the ground for asking for a new judge? Not bias, I take it. Incompetence? Yes. That's novel. Free judgment, I think, is what you would call it. It is. I mean, she had gotten only 30 percent of the way through the direct examination and already made a statement on the record that she didn't believe anything she was hearing. At that point, he had asked 31 questions of which 29 questions were very clear. What is your name? Where were you born? Where did you go to school? What country are you from? And she said she didn't understand any of those answers. Now, I would. Do you have a problem of law here, a dual standard between the treaty and the denial that was granted? I'm sorry. Was there a problem? There were two claims made in this case, were there not? Convention against torture claim? Yes, the convention against torture claim. Did she deal with that separately? She did not deal with that at all. Okay. She went through and she stated what the standard was for asylum, what the standard was for withholding. She never discussed the standard for withholding, which is more likely than not. It is the lowest standard. She never discussed that. If we were to reverse on that ground, in other words, there's a failure at the hearing level to do anything about the treaty claim, would you want that sent to another HALJ? Well, I think that it needs to be addressed, and it has not been addressed. Can this ALJ adequately address that? I don't think so. If granted the right to pursue such additional evidence, this may be necessary. Yes. Okay. You know, this probably should be clear from the record, and it's not particularly relevant, but the petitioner's counsel is out in Virginia. Is the petitioner here? Yes, he is here. Oh, I see. The hearing was held. The hearing was held here in Los Angeles. I was wondering what. And apparently, as I understand it, the attorney that was hired to do the original brief to the BIA was from somewhere back east, and then this attorney came in. I don't need the whole history. Okay. I had somehow, having noticed that counsel was back east, I somehow got it in my mind that the petitioner was back east, which raised the question of why we are hearing this. But I understand. Petitioner is here. The IJ was back east. The hearing is here, so jurisdiction is here. That's all we need. Okay. Thank you. Anything else? We'll hear from the government. Thank you. May it please the Court. My name is Julia Doig, and I represent Attorney General John Ashcroft in this case. In his brief, petitioner raised basically two sets of arguments. One is a series of due process claims based on alleged inadequacies in the hearing before the immigration judge, and the second is the denial of the withholding of deportation claim and the Convention Against Torture claim. It wasn't a model hearing.  It's not the kind of thing you want to hold up when you have your training seminars for new IJs and say, this is how you do it, was it? You'll admit that. You've defended better cases. Yes, I have, Your Honor. On behalf of your client. I have. Hundreds of thousands of cases, actually. In fact, most IJs, in my experience, do a pretty good job, at least the way I view it. Not all my clients always agree with me, but nevertheless, that's my view. I must tell you, I was a little taken aback by the performance of the judge here. It was obviously a man who told what ultimately was a pretty coherent and specific story about having been tortured in ways that I'm sure were both embarrassing and painful to him to recount. And I did not get the sense that the IJ in this case had any sympathy for the difficulties of somebody who's testifying, perhaps for the first time in any court proceeding, in a language that may not be his native tongue, about events that are painful and embarrassing. I must say, I think that most immigration judges I've seen on the record have shown more of what I would expect above understanding and compassion in that situation than this one did. Would you agree with that? I would agree that this. In your experience? Yes, Your Honor. I did try several hundreds of cases in immigration court myself years ago, and this may not be what you termed a model hearing, but that being said, none of the errors alleged by the petitioner rise to the level of a due process violation in this case. For instance, the translation errors, none of which. Maybe not, but when we talk about the finding of lack of credibility, I just had some hard time figuring out why the IJ, other than she just didn't believe the guy, what cause and condition she gave for not believing? Well, the immigration judge did not give a series of reasons in her decision. Her decision was rather conclusory. But as this Court knows, your role is to review the Board's decision rather than the IJ's, because the Board did a de novo review of this case. And in the Board's decision, it outlined four very specific discrepancies between the testimony and the asylum application, all of which go to the heart of the claim, which are based, the claim is essentially based on a series of arrests, detentions, beatings, torture, suffered by the petitioner in his native country. Did the BIA segregate both claims and deal each separately? Both claims, meaning the due process and the withholding and CAD claims. The treaty claim and the? The Board did not, because in fact. It was raised. It was raised. Why did they deal with it? It was an error. Although there are different standards and different views. Exactly. There should be different findings, as a matter of fact. Yet if the alien is found to be incredible, which was the Board's finding, he would be unable on this record to support either an asylum claim, a withholding claim, or a convention against torture claim. It is true that in certain cases you may have different facts where someone may not succeed on an asylum claim. If you take the specifics of the most outrageous conduct towards it and deal with that in the treaty claim, and you find that testimony, that segment of his testimony to be absolutely credible, and you find with respect to testimony in the other claim not credible, you still can find that he has a treaty right. One could, but not on this record, because it was, in fact, the significant discrepancies between the asylum application, that seven-page, very, very detailed affidavit. I have not seen very often affidavits that specific went into detail about the political history of Sudan, the history of his family members, the history of what happened. Was he asked about the discrepancy? He was asked on cross-examination. Despite the immigration judge's comment on the record, the INS trial attorney went on to conduct a fairly extensive cross-examination, which raised the very discrepancies noted by the Board in its opinion, and questioned the alien about that. He stuck to his then testimony of what occurred. And as you can see from the Board's recitation of those specific discrepancies, there was a significant difference between what was said in the asylum application and what was said in the testimony, such that the testimony was much worse. Well, let's go over the four things. The first one is that he mentioned a beating at the hearing, but that he omitted it from his application. In his application, this is in regards to the 1983 demonstrations, his application said, I participated in many demonstrations in the year 1983. His testimony before the court was, there was a, I participated in a 1983 demonstration. I was beaten at that demonstration, and other people were killed. Now, that's not an inconsistency so much as a discrepancy. Inconsistency in the sense that it's not a contradiction. Both statements could be true. One just adds additional information. Just so we understand each other, there's no contradiction between the testimony and the application. Well, there's a contradiction to the extent that in the application he said, I participated in many demonstrations with no elaboration. Demonstrates in ten demonstrations. Then he hones in on one and says, as a result of this one, I was beaten. Yeah, where's the contradiction? Many versus one. There's a substantial difference in my mind as to whether he participated in many or one. He didn't sustain a beating at all ten, did he? No. I mean, not to my knowledge. I mean, but that's, I mean, if you look at his testimony and believe what he says, I believe he's been in a number of demonstrations, but I only believe he was beaten at one. Are all of these discrepancies, I'm looking at them, the kind that they say he mentioned one, but he didn't mention the other. Are there any that are what we call a contradiction where he gives an account of an event and says, no, I wasn't beaten, and then he gives an account of the same event and says, I was beaten, for example. Or, you know, let's say he said Coke bottle once and Pepsi bottle. You know, is there something where the two statements can't both be true? With regard to the 1989 and 1993 variations between the application and the testimony, I would say that there's not an explicit contradiction. It's just the failure to discuss either event in the application that conflicts with the testimony of the hearing. Now, with regard to the January 1994 arrest and detention, there is a direct contradiction. In his application, in that affidavit, he said that he was detained and interrogated, that he requested and received counsel, and he was released on his own recognizance. In his testimony, he said he was detained, beaten, forced to walk on glass, stabbed, and then thrown in the street. There's a significant difference between the account of that event between the two. And obviously the second one. So once again, there's no contradiction. The testimony adds information that is not contained in the application, but is not contradictory to it. It may be enough, but let's just be absolutely clear about, you know, there are two kinds of inconsistencies. One of them is one contains more facts than the other, but they're, you know, they're harmonious. Another one would be where one contains a fact that is contradicted, that can't live with, you know, one of them at least must be false. Are there any in the latter category where he says something in his application that simply cannot be true in light of his testimony or vice versa? Yes. With regard to two specific things. Which is, what are those? The issue of whether he requested and received legal counsel, which he said in his in his application. But where is this? Where is this in the board decision? It's probably on page two. It's one of those things. It is one of the things that the board knows which pages it's on. Page two. Page two is the board's decision. And his declaration is contained at pages 257 to 263. And I will point specifically to the section in which he discusses the counsel issue with regard to that last arrest and detention. The other, while I'm looking for that page number, the other complete contradiction between the two is whether he was released on his own recognizance, as he says in the application, or whether he was, in fact, thrown or dumped out on the street, which is his testimony. I'm sorry. What's the difference between the two? Well, released on his own recognition. I'm sorry. I'm not. To me, it sounds like that he walks away. He, you know, is released. And just as if in this country, a court releases you, you're allowed to leave on your own accord, rather than the government officials here, the security forces driving. In most instances, you can go without posting bail or without being liable, I guess, to further legal proceedings. Isn't, aren't they both two different ways of describing one more gingerly same event? I. I mean, it's not like one of them said they imposed a huge bond. Another one said they released me on my own recognizance. That would be inconsistent. I think the significant discrepancy between the two, and perhaps we differ on this, is whether he walked away from this arrest, detention, interrogation, or whether he was basically thrown out. He said he walked away? Released on his own recognizance. But to me, he did not say walk away. He released on his own recognizance by being dumped on the street. Well, I've never heard that. Is there any, is there any inconsistency within that, whether they do it nicely or nastily? In my opinion, there is. One is a legal concept. One is a concept that has to do with being released without having to post a bond. The other one has to do with the manner in which your release is effectuated. I'm not trying to be nice here, but I just don't see the contradiction. Well, is your position here that there's a contradiction between the application and the testimony and the evidence trial, or that there's a discrepancy? Both, really. Is the discrepancy the same thing as the contradiction? Perhaps not, as this Court interprets it. Well, how about the Board? The Board talks about unexplained discrepancies. It doesn't talk about contradictions. When do you take that to mean? I take it to mean that the Board understood the word discrepancy to describe these differences between the asylum application and the testimony. Whether this Court calls them discrepancies, inconsistencies, or any other similar term, they represent the specific and cogent reasons from which the Board derived its adverse credibility finding and its denial. People can't give two accounts of the same story and have, I mean, unless they are coached, they will necessarily use different language. And sometimes they will add some detail and omit some detail, because every time you tell a story, it may be somewhat different. It may be particularly different if you are telling a story dictating to somebody, as opposed to telling it under examination, guided by a lawyer who knows to bring out the parts of the story that are particularly significant in light of his knowledge of the law and what matters, than if you are sitting there at home and trying to do your best to include what you think might be relevant. There may be lots of reasons why stories are different, just simply because they are told at different times. That does not necessarily mean, discrepancy doesn't necessarily mean the person is lying, which is what we are looking for, whether there is support, whether they are lying. A contradiction is different. If he gives one account one time and gives a contradictory, inconsistent account on a material matter another time, then you say, gee, he must be lying, because this is not just fleshing out a story. This sounds like a fabrication. But that's the difference between an inconsistency and a contradiction. What I find difficult about the BIA's decision, I mean, first of all, we have an IJ that does a poor job. I'm grateful for her admission, but she did. And then we have the BIA pointing to discrepancies. But, of course, I would expect that when a petitioner testifies and counsel, who knows what are the good parts of the story for supporting an asylum claim, of course I would expect him to give more detail to those parts of the story that counsel knows should be helpful in this case. Would you expect anything different? But, Your Honor, this isn't a case. Did he prepare the asylum application with counsel, by the way? I'm sorry? Was counsel? Counsel was involved. There have been several counsels throughout this case. Counsel was involved at the immigration court stage. And the filing of the application? There's no evidence that. He said he was assisted by someone, yet, you know, a named person, in putting it together. Wouldn't you expect a foreign, somebody not familiar with our laws, and most Americans are not familiar with immigration laws, sort of trying to tell a story that he would give less detail than when he is telling a story guided by a lawyer who sort of knows what matters? Isn't that what you would expect? One could expect that. That's not what occurred in this case. This is not a case in which he said, I was beaten in the application, and in the testimony explained how he was beaten, with what, by whom, that sort of thing. It's a significant enhancement of the story at the testimonial stage. Secondly, with regard to this attachment, this affidavit he filed as an attachment to his asylum application, it starts out, it's clearly prepared by somebody with a good understanding of United States law, because it says it's a declaration, it's written as a declaration. Now, the specific page site you were looking for on the January 1994 is page 261 of the administrative record, where he discusses the differences there. This is not a case in which the alien said, I crossed the street, and his later account was, I crossed the street, I was hit by a bus and killed. It's something more akin to that than what you were saying, Your Honor, and it is not uncommon for an alien to provide more detail at the testimony stage than he's prepared in his application. But here it's the level of detail and the tremendous discrepancies. Now, and it's not just one point. It's four specific and cogent reasons supported by the board, which is more than enough to support an adverse credibility finding. The alien has not until this day asked for this case to go back to a different immigration judge. He did not ask for that when he was represented by counsel at the board stage. I'd say he's failed to exhaust that issue, and I fail to see any due process claim which could be sustained based on the conduct of the hearing, especially given that the board specifically reviewed the entire record. Thank you. Thank you. We've exhausted your time. If you wish a minute for rebuttal, you may take it. Thank you, Your Honor. I would just make one point regarding the board's findings. The board understood that the judge had not made an adequate credibility finding. They went through the record, and the best they could come up with was the issues you've just been discussing, the issue of providing more information at the hearing than in the statement. The board did not cite one inconsistency, one contradiction, nothing else. And when they got through doing all that, they didn't make a credibility finding. They said his credibility was hampered. His credibility was degraded. Well, okay, credibility can be hampered, but that's not a finding of no credibility. They didn't find that this applicant had lied. They never suggested that at all. Maybe they were being polite. Well, if they're polite, that would be first. And secondly, this is not the time to be polite on the crucial issue in the case. Thank you. Thank you. Well, I want to thank both counsel. I thought this was a very helpful argument.
judges: Beezer, Kozinski, Schwarzer